**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alex GORT, a/k/a Alfonso, a/k/a Alejandro Domingo Gort, Defendant-Appellant.**

No. 83–7289.

United States Court of Appeals, Eleventh Circuit.

Aug. 6, 1984.

been quite consistent in upholding the Act's policy of deference to Board fact-finding.

Oscar Rodriguez, Coral Gable, Fla., Joel Kaplan, Miami, Fla., for defendant-appellant.

William R. Favre, Jr., Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and GARZA *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this criminal case, we examine whether sufficient evidence exists to sustain the conviction of Alex Gort, the appellant, for conspiring to distribute and possess with intent to distribute multi-ton amounts of marijuana, in violation of 21 U.S.C.A. § 846 (West 1981). Finding that the evidence is sufficient, we affirm.

### Background

Alex Gort and several other individuals sought to use the shrimping boat "Roll Tide Limited" (boat) to import marijuana. According to Foster, the manager of the

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

boat, Gort was involved in the discussion concerning "taking the boat on the marijuana run."

The boat departed from Bayou La Batre, Alabama, for its destination in Colombia after Foster was paid $17,000 for its use. Cartwright made the cash payment to Foster in Gort's presence. Gort was not aboard the boat when it departed from Alabama for Colombia. When the boat reached Colombia, it experienced mechanical difficulties, and Gort flew to Colombia with the needed replacement parts.

After the boat was repaired, it traveled from Cartegena, Colombia, "up north somewhere." Kevin Crane, who, along with his brother, was in charge of operating the boat, testified that Gort instructed him to travel in that direction. Gort remained aboard the boat as it traveled up north. Someplace "up north" approximately 300 bales of marijuana were loaded on the boat from canoes. Gort was present when the bales of marijuana were loaded aboard the boat in Colombia, but left the boat after it had been loaded. The boat then sailed for Key West, Florida. Near Key West, an airplane dropped a life vest near the boat with a note attached directing the crew to sail toward East Cape. At East Cape, several small boats came along side the "Roll Tide Limited," and the marijuana was transferred to the smaller boats. After the marijuana was unloaded onto the small boats, the Cranes cleaned the "Roll Tide Limited" at Gort's direction.

The evidence did not indicate any further involvement or activity on the part of Gort in the criminal scheme after he left the "Roll Tide Limited" in Colombia. After returning to the United States, Kevin Crane called Gort and complained that he had not been paid for his services. According to Crane's testimony, Gort told him that, "he had nothing to do with this and he had not made any deals with [Crane]." The government presented no evidence concerning the involvement of Alex Gort in

tion.

**1562**

plans to distribute the marijuana once it had been brought into the United States.

The jury convicted Gort of conspiracy to import marijuana and conspiracy to distribute and possess with intent to distribute marijuana. The court sentenced him to five years on the possession with intent to distribute count. The court suspended the sentence on the importation count but placed him on five years probation to run consecutive to the five-year term of imprisonment. In this appeal, Gort does not challenge his conviction on the importation count.

### Discussion

Gort contends that no evidence was introduced at trial indicating his involvement in an agreement to distribute marijuana. His sole contention is that a jury may not infer from a defendant's participation in an importation conspiracy and the size of the marijuana cargo that the defendant was also involved in a conspiracy to possess with intent to distribute the marijuana.

We have held in sufficiency of the evidence cases that "the evidence must be examined in the light most favorable to the government, accepting all reasonable inferences that support the verdict." *United States v. Curra-Barona,* 706 F.2d 1089, 1091 (11th Cir.1983).

Gort has, for purposes of this argument, conceded his involvement in a conspiracy to import some 300 bales of marijuana weighing approximately 20,000 pounds.

In resolving this issue, we find conflicting authority. Two Fifth Circuit cases decided in 1978 (*Cadena* and *Rodriguez*) which are precedent in this court, accept Gort's assertion. Another Fifth Circuit case (*Mann*), also precedent in this court, rejects Gort's assertion. A recent Fifth Circuit en banc decision (*Michelena-Orovio*), not precedent in this court, rejects Gort's assertion and clarifies the law in the Fifth Circuit. The Eleventh Circuit has been consistent in rejecting Gort's assertion (*Bulman* and *Cuni*). We now discuss each of these cases.

Gort correctly points out that two Fifth Circuit cases, *United States v. Cadena,* 585 F.2d 1252 (5th Cir.1978), and *United States v. Rodriguez,* 585 F.2d 1234 (5th Cir.1978), *aff'd,* 612 F.2d 906 (5th Cir.1980) (en banc), *aff'd sub nom, Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), hold that participation in a conspiracy to distribute may not be inferred solely from evidence of participation in the conspiracy to import a large quantity of marijuana.[1]

In *Rodriguez,* the defendants were charged with conspiracy to import marijuana and conspiracy to distribute marijuana. The evidence indicated that the total amount of marijuana imported was approximately 40,000 pounds. Even though a large quantity of marijuana was involved and the court upheld the importation convictions, the Fifth Circuit found insufficient evidence to sustain the convictions of two co-conspirators on the conspiracy to distribute count. The court stated:

> However, there was literally no evidence with respect to the involvement of Martins and Smigowski in a distribution scheme except what might be inferred from their participation in an agreement to import it. The direct and circumstantial evidence that they were peripheral participants in the importation scheme does not refute, beyond a reasonable doubt, the hypothesis that they had no knowledge of a conspiracy to distribute once it reached these shores.

> There was evidence that Smigowski and Martins were parties to the importation scheme, but there is no evidence that would establish beyond reasonable doubt that they would likely come in possession of the haul once it arrived, share in its proceeds thereafter, or other evidence from which it could in turn be inferred that they were privy to plans to distribute the contraband. We have already noted that possession of a large supply of a prohibited substance may justify the inference that the possessor intended to

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this circuit adopted as its governing body of precedent the

case law of the former Fifth Circuit as of September 30, 1981.

distribute it, but there was no evidence that Smigowski and Martins had sufficient dominion over or interest in the marijuana to warrant the inference.

*Rodriguez,* 585 F.2d at 1247.

In *Cadena,* as in *Rodriguez,* the court was unwilling to infer knowledge of and participation in a conspiracy to possess marijuana with intent to distribute based solely on the size of the cache without proof of a knowing agreement to join that conspiracy.

As to Cadena, like Smigowski of the land conspiracy, *see United States v. Rodriguez, supra,* there was no evidence that he knew of a distribution scheme when he conspired to import the marijuana. Unlike the situation presented by an ongoing enterprise, Cadena had no interest in or awareness of what plans, if any, had been reached to dispose of the marijuana once he reached these shores. Although a conspiracy to import facilitates a conspiracy to distribute, one cannot [join] a conspiracy, whether by conduct or verbal accord, unless one knows that it has in fact been concocted. Although we have indicated that there was sufficient evidence from which it might be inferred that Rodriguez and Albernaz had joined distribution plans, from Cadena's prospective, it was not apparent that any accord had yet been reached, either tacitly or otherwise.

*Cadena,* 585 F.2d at 1266. The Fifth Circuit in *Rodriguez* and *Cadena* reversed the convictions on the conspiracy to distribute counts and required more evidence of the defendants' involvement in the distribution scheme.

In *United States v. Mann,* 615 F.2d 668 (5th Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d. 193 (1981), the defendant sought to challenge the sufficiency of the evidence in support of his conviction for conspiracy to possess with intent to distribute marijuana. The Fifth Circuit affirmed the conviction, stating:

The defendants were apprehended with over 22,500 pounds of marijuana in their possession, far too much for the personal consumption of four individuals. Having determined that defendants planned to import their cargo, the jury was entitled to infer from the facts before it that some plan had been made for its disposition.

*Mann,* 615 F.2d at 670. The *Mann* court went on to hold that the very size of a marijuana cargo may be sufficient to show intent to distribute. *Mann,* 615 F.2d at 670.

The Fifth Circuit in *United States v. Michelena-Orovio,* 719 F.2d 738 (5th Cir. 1983) (en banc), examined whether evidence of the defendant's involvement in a conspiracy to import a large quantity of marijuana may also be sufficient to sustain that defendant's conviction for conspiracy to possess the marijuana with intent to distribute it. *Michelena-Orovio,* 719 F.2d at 740. The panel opinion held that a jury may not infer from the size of the cache and a defendant's involvement in a conspiracy to import that the defendant was also involved in a conspiracy to distribute the marijuana. *See United States v. Michelena-Orovio,* 702 F.2d 496, 506 (5th Cir.1983), *aff'd in part, rev'd in part,* 719 F.2d 738 (5th Cir.1983) (en banc). The Fifth Circuit, sitting en banc, reversed the panel opinion on the conspiracy to distribute issue holding that sufficient evidence existed to sustain the defendant's conviction for the conspiracy to possess with intent to distribute marijuana count. After reviewing the cases which permitted a jury to infer intent to distribute from the size of the cache, the Fifth Circuit, en banc, held:

Today we hold that once the jury had reasonably concluded, on the basis of the factors described earlier in this opinion, that the defendant was guilty of conspiracy to import marijuana, it was entitled to infer from the quantity involved that the defendant was also guilty of participation in the conspiracy to possess the marijuana with intent to distribute it.

*Michelena-Orovio,* 719 F.2d at 756–57 (footnote omitted.) This holding clarified the law in the Fifth Circuit.

The Eleventh Circuit, in *United States v. Bulman,* 667 F.2d 1374 (11th Cir.), *cert.*

*denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982), recently examined whether sufficient evidence existed to sustain a conviction for conspiracy to possess with intent to distribute and to distribute marijuana. In rejecting the appellant's assertion, we stated:

> Bulman also contends that, even if there was sufficient evidence to support a conviction for conspiracy to import marijuana, the evidence was insufficient to prove conspiracy to possess with intent to distribute and to distribute. There is no evidence, Bulman asserts, that he ever discussed distribution or that he was involved in arrangements to unload the plane. The very amount of the drug to be imported can, however, show intent to distribute. *United States v. Perry,* 480 F.2d 147, 148 (5th Cir.1973). The size of the expected load, 5,000 pounds, and his question concerning the possibility of importing three such loads provided a jury with reasonable basis for concluding that Bulman was guilty of conspiracy to possess with intent to distribute.

*Bulman,* 667 F.2d at 1378–79.

In *United States v. Cuni,* 689 F.2d 1353 (11th Cir.1982), the defendant challenged his conviction for conspiracy to possess with intent to distribute more than 1,000 pounds of marijuana. In *Cuni,* the defendant also sought to argue that "mere attempted importation is insufficient to sustain a conviction for conspiracy to possess with intent to distribute." *Cuni,* 689 F.2d at 1356. The *Cuni* court rejected this argument, stating that it "is completely without merit. It is well settled that intent to distribute a controlled substance under 21 U.S.C.A. § 841 may be reasonably inferred from the quantity of the contraband." *Cuni,* 689 F.2d at 1356.

As to this important question, two conflicting lines of authority exist within our circuit. We must choose one. We believe the approach set forth in the *Bulman, Mann, Cuni,* and *Michelena-Orovio* (en banc) decisions is clearly the more dominant and better-reasoned one. Accordingly, we hold that a jury may infer a conspiracy to distribute a substance based solely on the defendant's participation in a conspiracy to import a large quantity of that substance. *United States v. Luis-Gonzalez,* 719 F.2d 1539, 1544 (11th Cir.1983). This position has been consistently held by Eleventh Circuit panels.[2] The jury is not required to find, and it must not be instructed to find, a conspiracy to distribute because of quantity. It, however, may properly make such a finding based on the quantity of the substance imported or attempted to be imported.

In this case, based upon the size of the cache (approximately 20,000 pounds) and Gort's involvement in the conspiracy to import the marijuana, the jury was entitled to infer his involvement in the conspiracy to distribute and possess with intent to distribute the marijuana. Gort's conviction is

**AFFIRMED.**

---

2. We note that:
'As a panel of this Court, we are without power to overrule a decision of another panel. That task falls solely to the full court sitting en banc.' *Ford v. United States,* 618 F.2d 357, 361 (5th Cir.1980). Neither can one panel 'disregard the precedent set by a prior panel, even though it conceives error in the precedent. Absent an overriding Supreme Court decision or a change in the statutory law, only the court sitting en banc can do this.' *Davis v. Estelle,* 529 F.2d 437, 441 (5th Cir.1976)....
Here, we cannot pay heed to one line of precedent without disregarding the other, and we lack the authority to overrule one line at the other's expense.
*Washington v. Watkins,* 655 F.2d 1346, 1354 n. 10 (5th Cir. Unit A 1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).